IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

ALLIANZ GLOBAL RISKS US         )    CASE NO. _____
INSURANCE COMPANY,              )
                                )
        Plaintiff,              )
                                )
    v.                          )
                                )
BRYAN ANDERSON, PREMIER LAND    )
COMPANY, PREMIER FINANCIAL      )
GROUP, SETH MURPHY, and         )
CHANTEL MURPHY,                 )

        Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, by and through undersigned counsel, for its complaint for declaratory judgment against BRYAN ANDERSON, PREMIER LAND COMPANY, PREMIER FINANCIAL GROUP, SETH MURPHY and CHANTEL MURPHY, states as follows:

## NATURE OF ACTION

1.      Allianz Global Risks US Insurance Company seeks a declaratory judgment in this insurance coverage action concerning its rights and obligations to afford coverage under a policy of insurance issued to Bryan Anderson, Premier Land Company, and Premier Financial Group (the "Insured Defendants").

2.      On or about September 11, 2025, Seth and Chantel Murphy filed a lawsuit against the Insured Defendants, among others, which is currently pending in this Court, the District of North Dakota, as Case No. 1:25-cv-00219 ("The Underlying Lawsuit").  A copy of the Complaint of The Underlying Lawsuit is attached and incorporated as **Exhibit A**.  The exhibits attached to

the Underlying Complaint (Doc No. 1, Attachments 2-19) are incorporated by reference but are not re-attached to avoid duplication.

3.      Allianz has reserved its rights to deny any obligation to defend or indemnify the Insured Defendants regarding that matter, and files this Declaratory Judgment action for the purpose of obtaining a declaration of its coverage rights and obligations.

4.      A justiciable controversy currently exists among the parties because, on information and belief, Defendants contest and dispute whether the Allianz insurance policy affords insurance coverage for the Underlying Lawsuit.

## PARTIES

5.      Plaintiff Allianz Global Risks US Insurance Company is incorporated pursuant to the law of the State of Illinois and maintains its principal place of business in Illinois.

6.      Defendant Bryan Anderson is a citizen of the State of Montana.

7.      Defendant Premier Land Company ("PLC") is a business entity owned and controlled by Defendant Anderson, is incorporated pursuant to and maintains its principal place of business in Montana.

8.      Defendant Premier Financial Group ("PFG") is a business entity owned and controlled by Defendant Anderson, is incorporated pursuant to and maintains its principal place of business in Montana.

9.      Defendant Seth Murphy is a citizen of the State of North Dakota.

10.     Defendant Chantel Murphy is a citizen of the State of North Dakota.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over all defendants because they are citizens of the State of North Dakota and/or transact significant business and maintain assets, accounts or

other property in the State of North Dakota, upon which it was foreseeable that they would be hailed into the Courts of North Dakota.

12.     This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1), because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.  In addition, this Court has jurisdiction because this is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-02.

13.     Venue is proper in this federal district court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action occurred in this judicial district.

## GENERAL ALLEGATIONS

### A.     The Policy

14.     Allianz issued Sponsored Life Insurance Agents Errors and Omissions Liability Insurance Policy Number USF11507240001 to The Financial Sales Professional Purchasing Group on Behalf of Affiliated Life and Health Agents for the Policy Period of January 1, 2024, to January 1, 2025 ("the Policy").  A true and accurate copy of the Policy is attached as **Exhibit B**.

15.     Mr. Anderson became an "Insured" under the Policy by electing, applying for, and paying a premium for coverage under the Policy.

16.     In applying for coverage under the Policy, Mr. Anderson attested that a copy of the Policy was made available to him, and he reviewed it prior to enrolling as an Insured.

17.     The Policy defines the term "Insured" to include, in relevant part, an "Agent" or "Agency/Agency Staff," "but solely while performing Professional Services."  To the extent that they were rendering "Professional Services" in the context of the Underlying Claim, Defendants PLC and PFG are Insureds as defined by the Policy.

18.     The Policy's Limits of Liability applicable to Defendants Anderson, PLC and PFG are $1,000,000 each Claim and in the Aggregate, inclusive of "Loss," subject to a $500 each Claim Deductible.

B.     **<u>The Underlying Claim</u>**

19.     The Underlying Claim was preceded by Mr. Anderson receiving copies of letters sent by Defendants Seth Murphy and Chantel Murphy (collectively, "the Murphys" or the "Murphy Defendants") to National Life Insurance Company ("National Life") dated July 8, 2024, and August 6, 2024 (the "Letters to National Life").  True and accurate copies of these Letters are attached as **<u>Exhibit C</u>** and **<u>Exhibit D</u>** respectively.

20.     According to these Letters to National Life, in 2022, the Murphys met with a representative of Dakota National Bank & Trust to discuss refinancing an equipment loan.  During this meeting, the bank's representative recommended that the clients seek estate planning services from Pelican Advisory Group. The Murphys subsequently consulted with Randall Richardson of Pelican Advisory and other professionals, including Mr. Anderson, PLC and PFG.

21.     The Letters to National Life allege that Messrs. Richardson and Anderson recommended that the clients (the Murphys) borrow $13,825,000 to finance $50,000,000 worth of life insurance from National Life.

22.     Moreover, the Murphys' Letters to National Life allege that after following the advice of Messrs. Richardson and Anderson, as well as others, they learned that their sales pitch was fraudulent and violated insurance laws.

23.     Among other alleged misconduct, the clients discovered that the interest rate on the loans needed to fund the life insurance policies would be 6.5%, which they believe is contrary to alleged representations that the insurance program would be low risk and cost free.

24.     As a result of the alleged misconduct, the Murphys demanded that National Life rescind the policies, and refund all premiums paid for them.

25.     Defendant Mr. Anderson and others subsequently received a letter dated December 30, 2024, from counsel for the Murphys, reiterating the allegations asserted in the Letters to National Life and disclosing that National Life "agreed to rescind the policies and to refund all premiums, leaving only the need to unwind the Premium Financing Transaction."  A true and accurate copy of this letter is attached as **Exhibit E**.

C.     **The Underlying Lawsuit**

26.     The Murphys filed a lawsuit in this Court on September 11, 2025, against the Insured Defendants and others. *See* Ex. A*, Seth J. Murphy et al. v. Randall B. Richardson, et al.*, Case No. 1:25-cv-00219, Complaint.

27.     In the Underlying Lawsuit, the Murphys restate their allegations from the Underlying Claim and formalize claims against Defendants for participation in a RICO Enterprise Through a Pattern of Racketeering under 18 U.S.C. § 1962(c) (Count I), Conspiracy to Engage in a Pattern of Racketeering Activity under 18 U.S.C. § 1962(d) (Count II), Common Law Fraud/Fraud in the Inducement (Count III), Unjust Enrichment (Count V), and Violation of the North Dakota Consumer Fraud Act (Count VII).

D.     **Coverage Positions**

28.     Mr. Anderson, on behalf of himself, PLC and PFG, submitted notice of the letters from the Letters to National Life as a potential claim under the Policy.

29.     Mr. Anderson, on behalf of himself, PLC and PFG, also submitted notice of the Letter to Anderson, which demanded that participation in unwinding the Premium Financing Transaction, as a "Claim" under the Policy and requested that Allianz provide defense and indemnity coverage for it.

30.    Allianz initially denied coverage for the Underlying Claim under the Policy, but after communications with counsel for Mr. Anderson, agreed to provide him, PLC and PFG with a defense for the Underlying Claim, subject to a full reservation of rights under the Policy to deny coverage.  A true and accurate copy of Allianz's reservation of rights letter is attached as **Exhibit F** (the "ROR").

31.    Exclusion X contained in the Policy states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon, arising out of or in any way involving any sale, attempted, sale or servicing of any life insurance policy in which the payment or financing of any premium, in whole or in part, for such life insurance policy, whether secured from or through any premium financing company, financial institution, or any premium financing mechanism; or any representations made in connection with such premium financing.

32.    The Underlying Claim is based upon, arose out of or involves the sale, attempted, sale or servicing of life insurance policies in which the payment or financing of any premium, in whole or in part, for such policies was secured from or through a premium financing company, financial institution or other premium financing mechanism, as well as representations made in connection with such premium financing.

33.    Policy Exclusion X, therefore, negates defense and indemnity coverage for the Underlying Claim as to all Insureds.

34.    In addition, the Policy contains an Insuring Agreement for Agent Errors and Omissions Liability in which Allianz will pay on the "Agents behalf all Loss which such Agent is legally obligated to pay as a result of a Claim first made against such Agent or its Agency/Agency Staff and reported to [Allianz] during the Policy Period […]"

35.    The Policy defines the term "Loss," as "compensatory damages, whether part of any award or settlement, any punitive or exemplary damages against an Insured, but only to the

extent that such punitive or exemplary damages are insurable under the law most favorable to such Insured." "Loss," however, does not include the following: "(1) civil or criminal fines or penalties, or taxes; (2) the multiplied portion of any multiple damages award; (3) non-monetary relief, including any costs incurred in complying with a request, order, judgment or settlement agreement to provide non-monetary relief; (4) the return or withdrawal of fees, commissions or brokerage charges; or (5) any matter deemed uninsurable under the law pursuant to which this Policy shall be construed."

36.     The Underlying Claim indicates that the Murphy Defendants seek punitive damages, fines, penalties, multiplied damages, the return or withdrawal of fees, commissions or charges and other relief from Defendants. These do not constitute "Loss," within the meaning of that phrase as used in the Policy's Insuring Agreement.

37.     Further, the Policy's applicable Insuring Agreement only provides coverage for, in relevant part, a Claim "for a Wrongful Act in the rendering or failing to render Professional Services in connection with a Covered Product."

38.     The Policy defines the phrase "Wrongful Act," in relevant part, as "any actual or alleged negligent act, error or omission or negligent statement or misleading statement by any Agent or its Agency/Agency Staff in the rendering or failing to render Professional Services."

39.     The phrase "Professional Services" is defined by the Policy, in relevant part, as services "rendered in connection with a Covered Product by the Agent or its Agency/Agency Staff to a Client in the conduct of the Agent's profession as a Life or Accident and Health Insurance Agent, . . . so long as such Agent is properly licensed to render such services on any date on which a Wrongful Act is alleged to have occurred," limited to, "(1) soliciting (whether directly or

7

indirectly), negotiations, placing, recommending, selling or servicing of a Covered Product . . . ; or (2) providing advice or consulting solely related to a Covered Product."

40. The phrase "Covered Product," as defined by the Policy, includes, in relevant part, "Individual and Group Life Insurance (other than Variable Insurance products)."

41. The Underlying Lawsuit is primarily based on allegations of fraud and racketeering, which do not constitute "Wrongful Acts" committed while rendering of "Professional Services" in connection with "Covered Products," within the meaning of those phrases as used in the Policy's applicable Insuring Agreement.

42. Exclusion A states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon or arising out of any dishonest, fraudulent, criminal, malicious, intentional or willful act or omission by any Insured; provided however, this exclusion shall not apply unless there is a judgment, final adjudication or admission adverse to such Insured establishing that such Insured committed such conduct; provided however, this exclusion only applies to the Insured who participated in, acted with knowledge of or acquiesced to such conduct;

43. Allegations based on or arising out of the commission of dishonest, fraudulent, malicious, intentional or willful acts or omissions are asserted against the Insured Defendants in the Underlying Claim, and, as such, Exclusion A negates coverage under the Policy.

44. Exclusion B states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon or arising out of any Insured gaining in fact any personal profit or advantage to which such Insured was not legally entitled;

45. Allegations based upon or arising out of the Insureds gaining personal profit or advantage to which they were not legally entitled are asserted in the Underlying Claim, and, as such, Exclusion B negates coverage for it under the Policy.

8

46.     Exclusion H contained in the Policy states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon, arising out of or in any way involving any actual or alleged warranty, promise, guarantee or representation as to the value or yield of any Covered Products or as to non-guaranteed interest rates or future premium payments;

47.     Allegations based upon, arising out of or involving warranties, promises, guarantees or representations as to the value or yield of life insurance policies, non-guaranteed interest rates and/or future premium payments are asserted against the Insured Defendants in the Underlying Claim, and, as such, Exclusion H negates coverage for it under the Policy.

48.     Exclusion J states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon, arising out of or in any way involving any services performed by an Insured, whether or not the Insured is licensed as such, as:
>
> 1.     an accountant, architect, actuary, tax prepare or adviser (except for tax advice provided directly concerning a Covered Product), attorney, real estate agent or broker;
>
> 2.     an engineer, a financial planner or registered investment adviser, except as to services directly related to a **Covered Product**; or
>
> 3.     securities broker or dealer;

49.     Allegations based upon, arising out of or involving the Insureds' services as real estate agents or brokers, tax advisors and financial planners, other than with respect to Covered Products, are asserted in the Underlying Claim, and, as such, Exclusion J negates coverage for it under the Policy.

50.     Exclusion K contained in the Policy states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> Based upon or arising out of:

    1.      the collection, payment or return of, or the failure to collect, pay or return, any commission, fee, tax or premium;

51.     Allegations based upon or arising out of the collection, payment or return of, or the failure to collect, pay or return, any commission, fee, tax or premium are asserted against in the Underlying Claim, and, as such, Exclusion K negates coverage for it under the Policy.

52.     Exclusion O contained in the Policy states that the Insurer shall not be liable to make any payment for Loss in connection with any Claim:

    Based upon or arising out of or in any way involving:

    1.      Promissory notes;

53.     Allegations based upon, arising out of or involving loans in the form of promissory notes arranged by Mr. Anderson and other parties are asserted in the Underlying Claim, and, as such, Exclusion O negates coverage for it under the Policy.

54.     As such, an actual and justiciable controversy is presented by this action because Defendants maintain that coverage is afforded for the Underlying Claim under the Policy, and Allianz maintains that such coverage is not available.

## COUNT I – DECLARATORY JUDGMENT

55.     Allianz repeats and reasserts the allegations contained in paragraphs 1 through 56 of this complaint as if fully stated herein.

56.     The Underlying Claim indicates that the Murphy Defendants seek punitive damages, fines, penalties, multiplied damages, the return or withdrawal of fees, commissions or charges and other relief from Defendants that do not constitute "Loss," within the meaning of that phrase as used in the Policy's Insuring Agreement.

57.     The Underlying Claim asserts certain allegations, such as the Insureds' fraud committed in arranging loans, that do not constitute "Wrongful Acts" committed while rendering

of "Professional Services" in connection with "Covered Products," within the meaning of those phrases as used in the Policy's applicable Insuring Agreement.

58.    The Underlying Claim's allegations are excluded from the Policy's coverage as they are based on, arise out of, or involve:

a.    the sale, attempted, sale or servicing of life insurance policies in which the payment or financing of any premium, in whole or in part, for such policies was secured from or through a premium financing company, financial institution or other premium financing mechanism, as well as representations made in connection with such premium financing;

b.    the commission of dishonest, fraudulent, malicious, intentional or willful acts or omissions are against the Insureds

c.    the Insured Defendants gaining personal profit or advantage to which they are not legally entitled;

d.    actual or alleged warranty, promise, guarantee or representation as to the value or yield of Covered Products or as to non-guaranteed interest rates or future premium payments;

e.    warranties, promises, guarantees or representations as to the value or yield of life insurance policies, non-guaranteed interest rates and/or future premium payments;

f.    the Insureds' services as real estate agents or brokers, tax advisors and financial planners, other than with respect to Covered Products;

g.    the collection, payment or return of, or the failure to collect, pay or return, any commission, fee, tax or premium;

h.    loans in the form of promissory notes arranged by Mr. Anderson and other parties

As such, Allianz respectfully requests that this Court enter an order declaring that coverage is not afforded for any relief sought by the Murphys from the Insured Defendants as it does not represent "Loss," a "Wrongful Act," or "Professional Services" as defined by the Policy or, in the alternative, an order declaring that Exclusions A, B, H, J, K, O, and X contained in the Policy preclude defense and indemnity coverage for the Underlying Claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Allianz Global Risks US Insurance Company respectfully requests that the Court enter an order granting the sought declaratory relief in its favor that the Policy does not provide defense or indemnity coverage for the Underlying Claim, costs, and any other relief that the Court deems just and proper.

Dated this 4th day of March, 2026.

**VOGEL LAW FIRM**

*/s/ Nicholas E. Evans*

BY:    Steven F. Lamb (#04313)
Nicholas E. Evans (#09345)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
Email:    slamb@vogellaw.com
nevans@vogellaw.com
neelitgroup@vogellaw.com (service)
ATTORNEYS FOR ALLIANZ GLOBAL
RISKS US INSURANCE COMPANY

12